### Suesskind, et al. v. Michael Hardware Company.

(Decided February 10, 1928.)

Appeal from McCracken Circuit Court.

Tenancy in Common.—Owner authorized by co-owners to have such repairs made as would keep leased building in tenantable condition, as required by lease, could not install particular type of heating plant without consulting co-owners, if less expensive type would place building in tenantable condition, and latter should not be charged with additional cost of such plant without their consent.

WHEELER & HUGHES for appellants.

C. C. GRASSHAM for appellees.

OPINION OF THE COURT BY JUDGE REES—Reversing.

Mohr Michael, the father of appellants, Mrs. Ruby M. Suesskind and Mrs. Bess M. Powell, and his brother, Mike Michael, husband of the appellee Mrs. Mollie Michael, and father of the appellees Edwin B. Michael and Mrs. Pearl M. Blum, were, prior to the death of Mohr Michael in 1922, engaged in the hardware and saddlery business in Paducah, Ky., as partners under the firm name of M. Michael & Bro. They owned jointly certain real estate, including the building in which the partnership business was conducted. After the death of Mohr Michael, appellants sold to E. B. Fergerson their un-

divided one-half interest in the stock of merchandise, machinery, and fixtures of M. Michael & Bro., inherited from their father; the business being then carried on by M. Michael as surviving partner.

The contract of sale made in October, 1922, was reduced to writing and signed by appellants and their husbands and by E. B. Fergerson and Mike Michael. In the contract appellants are referred to as parties of the first part, E. B. Fergerson as party of the second part, and Mike Michael as party of the third part. Article 7 of the contract was, in part, as follows:

"The parties of the first part bind and obligate themselves to lease to the parties of the second and third part their undivided one-half interest in certain real estate and store buildings located in the city of Paducah, Kentucky, for a period of five years from the completion of this agreement, and with the privilege of extending said lease for an additional period of five years, upon the same terms. The property leased is described as follows, and will be leased for the consideration and on the terms and conditions herein set out:

"One four-story brick store building located on the north side of Broadway, being on Second and Third streets, at the price of one hundred seventy-five ($175.00) dollars per month; said sum to be payable to the parties of the first part for lease of their undivided one-half interest. One brick house located on the east side of North Third street, between Jefferson and Monroe streets, used as a manufacturing plant and one warehouse storeroom adjoining thereto, at the price of sixty-two ($62.50) dollars and fifty cents per month, said sum to be paid to the parties of the first part for lease of their undivided one-half interest. The residence next to and adjoining what is known as the Collar Factory is not to be leased and is not covered by this agreement

"The parties of the first part warrant that they are the owners of an undivided one-half interest in said real estate and obligate themselves to bear their proportionate part of the expense of keeping same in a tenantable condition and to keep the party of the second part in the peaceable possession thereof."

By a supplemental contract dated —— day of December, 1922, certain changes were made in the October contract in respect to the manner the payments were to be made by Fergerson, which are not material to this controversy, but the supplemental contract contained this provision:

"It is distinctly understood, however, that the VII article of the contract of —— day of October, 1922, is not abrogated but is here referred to, upheld and affirmed."

In December, 1922, a contract was entered into between appellants and Mike Michael by the terms of which Mike Michael was authorized to wind up the affairs of the partnership of M. Michael & Bro. The contract also contained this provision:

"The parties hereto now own certain valuable pieces of real estate in the city of Paducah as follows: M. Michael owns an undivided one-half interest in said real estate and Mrs. Powell and Mrs. Suesskind the other undivided one-half, and the said M. Michael agrees that he will collect all rents for said property, pay all taxes against said property and all insurance and repair claims, and the net balance will be divided equally between M. Michael, one-half, and Mrs. Powell and Mrs. Suesskind the other half."

After the sale by appellants of their interests in the partnership business of M. Michael & Bro. to E. B. Fergerson, the latter and Mike Michael organized a corporation to which the firm assets were sold. On March 10, 1925, the corporation transferred and assigned to Mike Michael the lease on the building in which its business was conducted, and Mike Michael assumed the payment of rent reserved in the lease dated October 9, 1922. Mike Michael continued, until his death on October 23, 1925, to collect the rent on the property owned jointly by him and appellants and to pay all taxes, insurance, and repair claims thereon and to remit one-fourth of the net balance to each of the appellants.

Many years before the death of Mohr Michael and while the partnership business of M. Michael & Bro. was being conducted in the building owned jointly by the partners, a heating plant had been installed consisting of

a steam boiler, pipes, radiators, and other fixtures. A sprinkler system to prevent fires, consisting of pipes through the building and water tanks on the roof of the building, had also been installed. To render the sprinkler system effective and useful a heating plant was required in order to prevent the water in the pipes and tanks from freezing. After the heating plant had been installed, but before the dissolution of the partnership by the death of Mohr Michael, the Paducah Power & Light Company began furnishing heat to business houses in Paducah from a central heating plant. M. Michael & Bro. disconnected the heating pipes in the building occupied by them from the furnace in the building and connected them with the pipes of the Paducah Power & Light Company. Late in the year 1924 the power company discontinued the business of furnishing heat, and Mike Michael advertised for bids for repairing the old heating plant in the building in question or installing a new one. The bid of Ed. D. Hannan for the installation of an oil burning furnace to cost $1,897 was accepted.

Mike Michael died in October, 1925, before the installation of the heating plant had been completed. Before his death Mike Michael had purchased the stock of E. B. Fergerson in the Michael-Fergerson Company, and thereafter the business was conducted under the style of Michael Hardware Company.

After the death of Mike Michael, the appellees continued the business as partners under the firm name of Michael Hardware Company but failed to remit the monthly rentals to appellants, and on January 21, 1926, appellants brought this action against the appellees for the rent alleged to be due. Appellees filed their answer and counterclaim in which they alleged the rent had been paid by applying it to the payment of taxes and cost of repairs on the leased buildings and that the cost of repairs and taxes amounted to more than the rent then due the appellants, and they prayed judgment for one-half of the amount by which the taxes and repairs exceeded the rent. A jury trial was waived and the case submitted to the court. The court, in response to a motion, separated its findings of fact and conclusions of law, which are as follows:

"1. The court finds that the expenditures on the property in this litigation which was jointly owned by plaintiffs and defendants were for necessary re-

pairs and upkeep to make it tenantable and to preserve it; that the charges therefor were reasonable and customary; that the taxes paid by defendants were a charge upon the whole property, of which plaintiffs owed one-half, and that the charge therefor was and is authorized.

"2.   The court finds that the plaintiffs were obligated together with the defendants as owners thereof to pay the taxes and make the repairs including the furnace and parts thereof shown in evidence, and that same was authorized and necessary.

"3.   The court finds that the reasonable monthly rental for the Broadway property, between Second and Third streets for October, November, December, and January, 1925, was $350 per month, and that defendants as rightful occupants of the property owed to plaintiffs one-half the rent thereof less expenditures for taxes, etc., found herein to be needed.

"4.   The court finds that $125 per month was the reasonable rental value of the Collar Factory property located on Third street, and for October, November, December, and January the rents therefor in that sum were collected by defendants.

"5.   The court finds that at the time the building on Broadway was leased it was equipped with furnace and steam heat, the use of the furnace being suspended while city heat was supplied; and on the cessation of city heat, there was no practicable way of heating the building except by restoring and repairing the furnace and its attachments, pipes, fixtures, etc., to make the building tenantable and as it was when the lease contract was entered into, therefore the repair of the furnace was authorized and the deduction proper, as was the other charges for repairs and taxes.

"6.   The court finds that it had been the custom of Mike Michael and defendants to furnish plaintiffs yearly a full statement of collections and expenditures for taxes, repairs, etc., upon the property, and that neither of them made any objection thereto or complaint about it, until now.

"7.   The court finds from the evidence that defendants expended on the property for taxes and necessary upkeep and repairs up to the institution of

this suit to make the property tenantable for which they have not been repaid, except by withholding it in payment to M. Michael & Bro., as the evidence shows, $2,366.22, one-half of which plaintiffs owe to defendants on settlement of the rents collected by them under the contracts, exhibits, and other evidence introduced on the trial.

"8. The court finds that as against the expenditures by defendants they are chargeable with rents collected in the sum of $1,900, and that the balance of one-half, $466.22, is the sum for which judgment shall go against plaintiffs in behalf of defendants on their counterclaim.

## "Conclusions.

"On these facts and other evidence appearing in the case, the court adjudges that as a matter of law the defendants are entitled to recover the taxes and repairs of plaintiff as sued for, and judgment against plaintiffs therefor in the sum of one-half of the difference in $2,366.22 and $1,900 or $233.11."

The evidence supports the court's findings of fact except as to the necessity of installing the particular type of furnace that was used in order to make the building tenantable and place it in the same condition as at the time it was leased. Of the $2,366.22 found by the lower court for the appellees, on their counterclaim, $1,897 represented the cost of an oil-burning furnace and $185.15 the cost of excavating a pit for the furnace. The balance was for taxes and minor repairs. Appellants insist that the furnace was installed solely for the convenience of appellees, who were using the building, and that they should not be charged with any portion of the cost.

The contract between Mike Michael and appellants provided that the former should collect the rents on the jointly owned real estate, and after the payment of taxes, insurance, and repair claims should remit to appellants their portion of the net balance. This he had done for a number of years. The contract of October 9, 1922, which was treated by the parties thereto as a lease of the property in question, provided that the lessors should keep the property in a tenantable condition, and the appellants obligated themselves to bear their proportionate part of the expense of keeping the property in repair. At that

time the building was equipped with a heating plant and a sprinkler system, and during the term of the lease the lessees could require that the heating plant and sprinkler system be kept in repair. When the Paducah Power & Light Company ceased furnishing heat, it was necessary to repair the old heating plant or install a new one.

The evidence tends to show that the old furnace, which had not been used for a number of years, could not be repaired, and that it was necessary to install a new one; but it does not show that the type of furnace that was installed was necessary to place the building in as tenantable condition as it was when it was leased. While Mike Michael was authorized to have such repairs made as would keep the building in a tenantable condition, he could not, without consulting appellants, install a particular type of heating plant if a less expensive type would place the building in as tenantable condition as it had theretofore been. A more expensive type of heating plant might be less costly to operate or might render the use of the building more convenient to the occupants, but the owners, without their consent, should not be charged with the additional cost of such a plant. On a return of the case the appellants will be permitted, if they so desire, to introduce evidence as to the reasonable cost of a heating plant that would place the building in as tenantable condition as at the time the lease was made.

For the reasons indicated, the judgment is reversed for further proceedings consistent herewith.