## Sueskind et al. v. Michael Hardware Company.

(Decided March 22, 1929.)

(Rehearing Denied April 26, 1929.)

WHEELER & HUGHES for appellants.

C. C. GRASSHAM for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

This is the second appeal of this case, the opinion in the first one being reported in 223 Ky. 59, 2 S. W. (2d) 1073, and which contains a full statement of the facts out of which the legal controversy arose. We will not repeat them here, but refer the reader to the former opinion for that information. When done it will be found that the rights of the parties emanate from certain contracts, the pertinent parts of which are referred to in that opinion and some of which are inserted therein in haec verba. It is a case wherein some of the joint tenants of real property leased to another one the entire premises with certain obligations on the part of all, among which was one on the part of the landlord tenants "to bear their pro-

portionate part of the expense of keeping same (the leased premises) in a tenantable condition,'' the performance of which was delegated to the lessee tenant. The latter during the term installed a new furnace with certain equipments.

This action was brought by appellants, who were the lessor joint tenants, against the lessee joint tenant to recover past-due rent for their leased interest, under the terms of the contract, and defendants attempted to offset that claim by plaintiffs' proportionate part of the cost of the installation. In the first opinion we held that the right to do so existed only to the extent of the *necessary* repairs by the lessee tenant to maintain the premises in the same tenantable condition that they were in at the time of the contract, and that plaintiffs were not liable for the excess cost of the installation above such necessary sum, if any.

The trial court did not so limit defendants' right, and that judgment was reversed in the opinion referred to with this direction: ''On a return of the case the appellants (plaintiffs) will be permitted, if they so desire, to introduce evidence as to the reasonable cost of a heating plant that would place the building in as tenantable condition as at the time the lease was made,'' and fixed that sum as the maximum amount of the offset. It will therefore be seen that the only controverted matter was and is the alleged excess cost of the installation of the new furnace, or heating plant, by defendants over and above what would have been necessary to restore the old one to the condition it was in at the time of the rental contract. Whether the cost of the installation exceeded the cost of such restoration was not determined in the former opinion, nor has it ever been in the court below.

After the filing of the mandate from this court in the trial court, defendants filed two supplemental answers designated as ''amendment No. 2'' and ''amendment No. 3.'' Amendment No. 2 was composed, or treated by the parties as composed, of three paragraphs. The first one averred that it was necessary to install the new furnace in the manner and of the type that had been done in order to make the premises in the same tenantable condition as they were at the time of the lease contract, and that a less expenditure would not have served the purpose of restoring the property to such tenantable condition. Plaintiffs moved to strike that paragraph, which motion was overruled, and they then filed a reply denying it. The

second paragraph of that amendment was in these. words: "Thereafter plaintiffs sought and obtained a sale of said property and buildings, and the entire property brought an increased price by reason of the increased value given thereto, equal to cost of purchase and restoration of said furnace." What is denominated as a third paragraph of that pleading averred that on a distribution of such sale price plaintiffs "received, kept, used and enjoyed, or now have and hold the increased distributable portion of the sale money due to such installation and improvement," and because of those facts they were estopped to claim that defendants (heirs of deceased lessor) did not have the right to expend the amount of money they did in making the repairs; or, what amounts to the same thing, that plaintiffs were estopped to claim that the repairs were excessive.

The third amended answer alleged, in substance, that plaintiffs were estopped to question the excessive repairs made and installed by defendants, because such installation enabled them to procure cheaper insurance on their interest in the jointly owned premises, and that they agreed to the installation as made by defendants. The demurrer filed to that pleading was overruled, and the reply filed thereto denied its averments. The court also overruled plaintiffs' demurrer filed to paragraphs 2 and 3 of amended answer No. 2, supra, and, declining to plead further, their petition was dismissed, and to reverse that judgment they prosecute this appeal.

Much argument is made in briefs as to the conclusiveness of the former opinion as to the law arising from the facts alleged in each of the two amended answers, filed after the return of the case; the plaintiffs contending that the first opinion, under the "law of the case" rule, forecloses defendants' reliance on any of the facts contained in either of those amendments, while defendants' counsel argues to the contrary. But under our view of the case we do not find it necessary to determine that. question, nor is it necessary to discuss the rights of landlord and tenant, or of one joint tenant, with respect to repairs to the premises, whether they be in the nature of independent permanent improvements, or merely repairing old improvements, since the former opinion foreclosed the rights of the parties hereto, under the contractual obligations assumed by them. It was therein held that: "While Mike Michael (the lessee joint tenant) was authorized to have such repairs made as would keep the

·building in a tenantable condition, he could not, without consulting appellants, install a particular type of heating plant if a less expensive type would place the building in as tenantable condition as it had theretofore been. A more expensive type of heating plant might be less costly to operate or might render the use of the building more convenient to the occupants, but the owners, without their consent, should not be charged with additional cost of such a plant.''

That determination is the adjudication that is binding upon both parties hereto under the ''law of the case'' rule; and hence we are relieved from discussing or determining the general rights of landlord and tenant to make repairs. But by so saying we would not be understood as doubting the soundness of the above excerpt from our former opinion. That excerpt in effect held that no part of the excess cost of the repairs made to the premises by defendants in the installation of the new furnace, if any, could be charged to plaintiffs, unless they had been consulted with reference thereto and had consented and agreed to it. So much, therefore, of the amendments that alleged such agreement and consent on the part of plaintiffs was properly pleadable by them, but which, as we have seen, plaintiffs denied by their reply. But the same cannot be said with reference to paragraphs 2 and 3 of the second amended answer, and to so much of the third one as set out and relied on the fact that the installation reduced the insurance rate upon the rented premises. To sustain their averments would be, in effect, to hold that a tenant, though ordinarily not allowed to recover from his landlord the cost of ordinary repairs, may yet do so if the repairs prove beneficial to the landlord and he receives profits therefrom. In other words, that the tenant may recover for all repairs made by him if beneficial to the landlord. but that he may not do so if the repairs are not beneficial, although he never had the right to make them, and which, to our minds, would nullify all the law relating to the rights of tenant to repair the premises and charge the landlord therefor, and would reduce the rule against such right without an agreement to an absurdity. To hold otherwise would be to say that a tenant, though having no right to make repairs (and which we so expressly held in the former opinion with reference to the contested portion thereof involved in this case), and may not collect therefor from the landlord as long as he holds title to the property, yet he may recover therefor, and the

landlord may be made liable if he sells the property and collects its enhanced value due to the repairs. We fail to discern any logic supporting the latter contention, and which is all that paragraphs 2 and 3 of the second amendment contained.

An analogous case would be one where a life tenant made improvements without the consent of the remainderman, which it is everywhere held that he might not do at the cost of the remainderman, except by the latter's agreement and consent to be charged therefor. But under the contention here made by defendants, if the remainderman should sell his remainder interest in the improved property, and realize its enhanced value, then he would be liable. But surely no one would contend that the law would approve such result. If in that case the life tenant could recover upon such a sale by the remainderman, it would be a right of property in him and would pass to his heirs after his death, so as to entitle them to recoupment from the remainderman at any time in the future when he might sell the premises and to which his right of possession was perfected by the death of the life tenant, but which, we conclude, no one would contend could be done. In other words, the doctrine that a landlord or remainderman cannot be charged with unauthorized improvements or repairs by the tenant, or the owner of the life estate, is not made to depend on whether or not the landlord or the remainderman continues to be the owner of the property, but upon the fact that the one making the improvements or the repairs had no right to do so from the beginning, and not having such right he can neither directly nor indirectly, at the present or any remote time, collect therefor from either a landlord in the one case or a remainderman in the other. In both of such relationships the one making the repairs, without authority to do so, does it at his own peril and cannot collect therefor from the person owning the future interest, nor may he hamper such one's rights to deal with the property as he pleases, even to selling it, without the latter incurring liability to pay for such an outlay, which was done without authority, and therefore wrongful from the beginning.

But it is argued that by selling the property and obtaining thereby its enhanced value, as alleged in the paragraphs of the second amended answer to which the court sustained the demurrer, plaintiffs in some way estopped themselves to resist the payment of their proportion of

786

the excess expenditure involved in this case; but we must acknowledge our inability to grasp the force of that argument, since we have seen that in doing so plaintiffs did nothing to mislead defendants into making the expenditure, or in taking any other position to their detriment, and which is essentially necessary to the creation of an estoppel. Besides, the invoked estoppel, if one, was what is designated in the law as an "equitable estoppel," and it may not be invoked to aid one in reaping benefits for an act that he wrongfully performed, and which he did without the agreement or consent of his adversary whom he seeks to estop. Estoppels were invented to protect rights, and not to reward the wrongdoer, though innocent of evil intent.

It is therefore our conclusion that the court erred in overruling the demurrer filed to paragraphs 2 and 3 of the second amended answer and in overruling it to the third amended answer, except its portion averring plaintiffs' consent to the making of the particular installation, and as a consequence it erred in dismissing plaintiffs' petition.

Wherefore, the judgment is reversed, with directions to set it aside, and for proceedings consistent with this opinion.

Whole court sitting.